Arrington *vs.* Cherry.

No. 60.—PLEASANT G. ARRINGTON, trustee, &c. plaintiff in error, *vs.* WILLIAM A. CHERRY, defendant.

[1.] A Judge at *Chambers* has no power, upon petition, to order a sale of trust property.

[2.] Chancery jurisdiction is conferred in this State upon the *Superior* Courts and not upon the *Judges* thereof.

[3.] It is competent for the trustee to sell the trust property, by and with the consent and approbation of the *cestui que trust,* provided there be no restriction upon his powers in the deed, and no limitation over to children or third persons.

[4.] In ordinary cases, notwithstanding a misdirection, if the Court see that justice has been done, and that a new trial *ought* to produce the same result, the verdict will not be disturbed.

Trover, in Bibb Superior Court. Tried before Judge STARK, July Term, 1851.

This was an action ot trover, brought by the plaintiff in error against the defendant in error, for the recovery of a negro woman named Henrietta.

The defendant pleaded the general issue.

On the trial, the plaintiff gave in evidence a deed of trust, executed by Richard Morris, Rhoda Jenkins and Matthew A. Marshall, on the 22d day of December, 1827, whereby, after reciting a contemplated marriage between the said Richard and Rhoda, and that the said Rhoda was possessed of four negroes, one of which was the woman Henrietta, of her own right, and that the said Richard was possessed of twelve slaves, in his own right, the said sixteen slaves were conveyed to the said Marshall, in trust for the sole and separate use of the said Rhoda, reserving to the said Richard the use and benefit of the said sixteen slaves for and during his natural life, without account."

The negro woman was identified—her value and the hire, and demand and refusal were proven.

The defendant offered a petition to his Honor, *Edward D. Tracy,* then one of the Judges of the Superior Courts of this State, setting forth that the petitioner, Allen Marshall, was the trustee of Rhoda Morris and her children, and that as such trustee, he had incurred considerable expense in the prosecution of actions for the recovery of the trust property, and other expenses, and prayed His Honor to grant him an order to sell a sufficiency of the property to meet said expenses, promising in his next return to show all his actings and doings in the premises.

Whereupon, on the 20th day of February, 1844, at Chambers, Judge *Tracy* ordered a sufficiency of the property to be sold to pay said expenses.

To which evidence counsel for plaintiff objected. The Court overruled the objection, and plaintiff excepted.

The defendant then read in evidence, a bill of sale from Marshall, as trustee, to Lawrence S. Cherry, in which the above order was recited; also a bill of sale from Cherry to the defendant. It appeared in evidence, that Mrs. Morris was in the City of Macon about the time or previous to the sale, and proposed

to sell the negro to Samuel J. Ray, one of the witnesses, which fact he communicated to defendant; also, that she was embarrassed, and would have to sell some of her property.

The plaintiff in rebuttal offered to prove by Samuel Hall, " the amount of expenses incurred in the litigation by Marshall, as trustee; that the order to sell was procured without the knowledge and consent of the said Rhoda; that there was no necessity for such sale, as, according to Marshall's acknowledgments before the sale, the hire of the negroes was sufficient to pay said expenses, and that the order for sale was kept concealed, and not placed upon the minutes of the Court for nearly three years after its passage;" which testimony was rejected by the Court, counsel for plaintiff stating that they did not expect to bring home notice of this conversation to defendant, and plaintiff excepted.

William A. Cherry, sworn by consent of the parties, testified that he bought the negro from Allen Marshall, paid him for her, partly in an execution obtained for professional service rendered in the recovery of the trust property, amounting to some sixty or seventy dollars, partly in a note he held against Marshall for about $300, and the balance in money, and that he gave $450 for the negro.

The evidence being closed, counsel for plaintiff requested the Court to charge the Jury—

1st. That as Rhoda Morris was not a party to the order for the sale of the property, and has never had her day in Court, she may attack the order collaterally, when it is sought under it to affect her rights, with which request the Court complied, with a qualification as will hereinafter more fully appear.

2d. That as the order is necessarily a part of the defendant's title, and as in that order the trustee was directed to sell the property for a specific purpose, it was the duty of the purchaser to see that the proceeds of the sale were applied in accordance with the order, and to prove such appropriation upon the trial of this cause.

3d. That if the Jury believe that the money arising from the sale of the negro was knowingly received by Cherry, in pay-

ment of an individual debt of the trustee, it will raise such a presumption of fraud, as will authorize the Jury to find for the plaintiff, unless it be explained, and the presumption rebutted; with which two last mentioned requests the Court refused to comply, but charged the Jury as follows:

The recovery in this case must be for the plaintiff, unless the conveyance made to the brother of the defendant has been successfully assailed for fraud, and this conveyance on which the defendant relies, should be set aside, if it has been proven to be fraudulent; for fraud will vitiate any sale or conveyance, and render it a nullity. The sale by the former trustee, if fraudulent, does not change the title to the property, but the title still remains in the plaintiff, and he must recover if the fraud is established. I have been requested by plaintiff's counsel to charge you that, as Rhoda Morris was not a party to the order for the sale of this property, she has never had her day in Court, and may attack the order collaterally, when it is sought to affect her right, and I have no doubt she may be allowed to attack both the order and the sale, in this action, and the door of this Court is open for her to show that the sale is void for fraud; and the Court, therefore, instructs you as requested by plaintiff's counsel, that she may attack the order collaterally, as it affects her rights, because she was not a party to the order, and never had her day in Court. I have been farther requested to charge as follows: that as the order is necessarily a part of the defendant's title, and as in that order the trustee was directed to sell the property for a specific purpose, it was the duty of the purchaser to see that the proceeds of the sale were applied in accordance with the order, and to prove such application upon the trial of this cause. I must decline complying with this request. The charge would be predicated upon the assumption of a fact which does not exist. The petition and order of sale read as follows: (the Court read the petition and order as above set forth,) and in the opinion of the Court, the purchaser in a case like this is not bound to see to the application of the purchase money, or to prove that it was properly applied by the trustee.

The plaintiff's counsel further requested me to charge, that if

the Jury believed the money arising from the sale of the negro, was knowingly applied by Cherry in payment of an individual debt of the trustee, it will raise such a presumption of fraud as will authorize the Jury to find for the plaintiff, unless it be explained and the presumption rebutted.

I must also decline complying with this request, but feel it my duty to instruct you as follows: that it would be your duty to set aside the sale by the last trustee entirely, as fraudulent and void, if it were shown, by proof, that Cherry knowingly in making the purchase, assisted the trustee in a misapplication of the funds, and in thereby defrauding the trust estate.

The main question is this : is Cherry a purchaser of this property in good faith, for a valuable consideration, without any notice of an intended fraud on the trust estate, by the trustee appropriating a considerable portion of the purchase money to his individual debt, and if he is such purchaser without such notice, and without knowingly giving the former trustee aid in the perpetration of a fraud, his title ought to be supported. Cherry's title is presumptively good, unless it has been proven to be fraudulent.

To which said charge and refusal to charge, plaintiff by his counsel excepted, and upon these several exceptions have assigned error.

S. & R. P. HALL, for plaintiff in error.

STUBBS & LESTER, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] We hold, in the first place, that the order granted by Judge *Tracy, at Chambers,* to sell this trust property, was a nullity.

[2.] Chancery jurisdiction in this State is conferred upon the *Superior Courts,* and not upon the *Judges* thereof. *Prince,* 447.

[3.] But conceding the invalidity of this order, was there not ample evidence before the Jury to authorize the verdict? Sam-

uel J. Ray testified, that *about* the time of the sale to Cherry, or *previous* thereto, Mrs. Morris, the *cestui que trust,* in a conversation with witness, stated that after discharging his debt, contracted for the support of herself and family, she was still very much involved, and would be compelled to sell a portion of her property to relieve her from embarrassment, and that she offered to sell *Henney,* the negro in dispute, to witness, but he declined purchasing, for the reason that she was so trifling that he would not have her.. Witness called on Cherry and communicated to him these facts.

It will not be disputed, I apprehend, that it was entirely competent for the trustee to sell this property, with the consent and approbation of the *cestui que trust,* there being no restriction in the deed, or limitation over to children or third persons, and with Ray's testimony before them, uncontradicted and unimpeached, the Jury were not only justified in rendering the verdict which they did, but they could have legally returned none other.

Taking this view of the case, we deem it unnecessary to consider the other points contained in the bill of exceptions. I would remark, however, that as it respects the charge of the Court, instead of fault being found with it by the plaintiff in error, it occurs to us that complaint might properly have come from the other side ; for while the door was thrown wide open to assail this transaction for fraud or other cause, and the Jury were left free and untrammelled, and clothed with plenary powers to set aside the judicial sale as void, the Judge omitted to instruct them, that notwithstanding this judicial sale was void, for want of power to grant it, notice to the *cestui que trust,* fraud, the misapplication of the proceeds, or any other cause, still, if Mrs. Morris voluntarily assented to it, and the transfer was made at her instance, the title was divested, and the present *trustee* could not recover the property.

[4.] Notwithstanding the misdirection of the Court, therefore, upon some of the questions raised on the trial, being entirely satisfied that justice has been done, and that a new trial *ought* to produce the same result, we are unwilling to send this cause down to be re-tried.

In the leading reported decision on the subject of granting new trials, that of the *Dutchess of Maganier*, (2 *Salk.* 646,) the Court admitted that the verdict was against law, but held that, inasmuch as the justice and conscience of the case were with the verdict, they would not interpose.

In *Brazier vs. Clap*, (5 *Mass. R.* 1,) *Sedgwick*, J. said, "Even if fault could justly be found with the Judge's direction, I do not think that a new trial ought to be granted. A new trial ought never to be granted, when the Court is perfectly satisfied that on a second trial the same verdict must, by law, be given, although there might have been some mistake by the Judge at the trial."

In *Springer vs. Bowdoniliam*, (7 *Greenl. Rep.* 442,) the Supreme Court of Maine held, that admitting a question at Law had been erroneously submitted to the Jury, the Court would not, for that cause, disturb the verdict, provided they were satisfied that it was correct.

In *Aldrop vs. Magill*, (4 *Day.* 42,) the Court, after recapitulating the facts, say, " Whether the charge of the Court was perfectly correct in point of law, it is unnecessary to determine. Justice is done and a new trial ought not to be granted."