[No. 12817.  In Bank. — May 30, 1891.]

ALANSON J. FOX et al., Appellants, v. HARRIET A. TAY et al., Respondents.

Statute of Limitations — Pleading — Matter in Reply. — When a defendant pleads the statute of limitations, matters upon which the plaintiff relies to relieve him from the bar of the statute are deemed to have been pleaded in reply to the answer.

Id. — Trust Fund — Liability of Representatives of Deceased Executor. — When a decedent was possessed of a trust fund as an executor, in respect to which he could not plead the statute of limitations, his representatives stand in no better position, and are not entitled to claim the benefit of the statute.

Id. — Express Trust — Running of Statute. — In cases of express trust, the statute of limitations does not commence to run until a repudiation of the trust.

Id. — Liability of Executor — Trust — Note and Mortgage to Co-executors — Foreclosure — Defense of Statute. — An executor who takes possession of assets belonging to the estate is a trustee thereof, and the trust not being barred by the statute of limitations, the fact that a note and mortgage given to his co-executors for the amount received appears to be barred by the statute is not available as a defense to the foreclosure of the mortgage in an action by the co-executors against his personal representatives.

Trusts — Application of Trust Funds. — A trustee must personally see to the application of any trust funds received, and he cannot pass them over to his co-trustee for investment or distribution, without rendering himself personally responsible for the acts and defaults of the co-trustee.

Estates of Decedents — Receipt of Assets by Foreign Executor — Liability to Account. — If assets of an estate situated in a jurisdiction foreign to that in which an executor qualified and received his letters come into his possession while residing in the foreign jurisdiction by a voluntary payment or administration, he is bound to account for them in the domiciliary jurisdiction.

Id. — Action by Foreign Executors — Foreclosure of Mortgage — Enforcement of Trust — Equitable Estoppel. — Foreign executors to whom, as trustees, a note and mortgage were given by their co-executor for the amount of assets received by him belonging to the estate, may maintain an action to recover the trust fund as mortgagees under the terms of the mortgage, without taking out letters testamentary in the jurisdiction in which the mortgaged property is situated, and the trust may be enforced indirectly by foreclosure of the mortgage, under the rule of equitable estoppel.

Id. — Action upon Demand against Executor — Witnesses — Competency of Parties. — Under section 1880 of the Code of Civil Procedure, providing that parties to an action or proceeding against an executor or administrator upon a claim or demand against the estate of a deceased person cannot be witnesses therein as to any matter of fact occurring before the death of such deceased person, the incompetency is only limited and partial, and the parties may testify as to any facts occurring subsequent to the death of the deceased.

Id. — Stipulation for Depositions — Waiver of Objections. — A stipulation for the taking of the depositions, under a commission and interrogatories, of parties plaintiff, subject to all objections as to the propriety, relevancy, and materiality of the interrogatories, does not waive objections of the defendants to the contents of the depositions on the ground that testimony was given of facts which occurred before the death of the decedent whose estate is represented by the defendants.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The depositions of plaintiffs and appellants referred to in the opinion of Mr. Justice Paterson were taken on commission in New York City, on direct and cross interrogatories, upon stipulations agreeing that the testimony should be taken, and that the witnesses should be interrogated in accordance with certain questions, direct and cross, "subject, however, to all objections as to the propriety, relevancy, and materiality of each thereof, and upon the express agreement that each party shall have the right, upon the trial of said action, to object to each and all of said interrogatories upon all grounds of objection to the propriety, relevancy, competency, and materiality thereof, anything in the stipulation to the contrary notwithstanding." It did not appear that defendants made

or reserved, at any time before the trial, any objection to taking the testimony of the plaintiffs upon the grounds of their incompetency to testify as witnesses in the action. When the depositions were offered to be read in evidence, nearly all the direct and cross interrogatories and answers thereto were ruled out upon the objection of defendants that the complaint showed upon its face that Charles J. Fox died in June, 1870, and that George H. Tay died in April, 1883, and that the question related to something that happened prior to June, 1870, and consequently prior to the death of Tay, and under subdivision 3 of section 1880 of the Code of Civil Procedure of this state, the witness, being one of the plaintiffs in this case, cannot be examined as to any matter of fact occurring before the death of Tay. Plaintiffs, by their counsel, thereupon duly excepted. *Further facts are stated in the opinion of the court.*

*Taylor & Haight,* for Appellants.

If assets, situated in another jurisdiction, come into the possession of the executor or administrator in the domiciliary jurisdiction by a voluntary payment or delivery to him, without administration there, he should account for them in the domiciliary jurisdiction. (Schouler on Executors and Administrators, sec. 175; *Parsons* v. *Lyman,* 20 N. Y. 103; *Barnes* v. *Brasher,* 2 B. Mon. 380; *Denny* v. *Faulkner,* 22 Kan. 89; *Shultz* v. *Pulver,* 3 Paige, 182; 11 Wend. 363; *Estate of Butler,* 38 N. Y. 397, 400; *Wilkins* v. *Ellett,* 9 Wall. 740; 108 U. S. 258; *Klein* v. *French,* 57 Miss. 662; *Wyman* v. *Halstead,* 109 U. S. 656; *Petersen* v. *Chemical Bank,* 32 N. Y. 43; 88 Am. Dec. 298; *Doolittle* v. *Lewis,* 7 Johns. Ch. 44; 11 Am Dec. 389; *Brown* v. *Gas Co.,* 58 Cal. 426; *Barton* v. *Higgins,* 41 Md. 546.) An executor is a trustee, and holds the assets of the estate in a fiduciary capacity. (*Magraw* v. *McGlynn,* 26 Cal. 421.) And he is estopped from claiming the benefit of the statute of limitations.

(*Ingle* v. *Richards*, 28 Beav. 366; *Lafferty* v. *Turley*, 3 Sneed, 157; *Picot* v. *Bates*, 39 Mo. 292; *Amos* v. *Campbell*, 9 Fla. 187; *Smith* v. *Smith*, 7 Md. 55; *Norris's Appeal*, 71 Pa. St. 106–119; *Johnson* v. *Overman*, 2 Jones Eq. 182; *Maningault* v. *Deas*, 1 Bail. Eq. 283; 2 Williams on Executors, 6th Am. ed., note *i* to page 1418; Wood on Limitations, secs. 189–205.) The probate of the will is conclusive evidence of the executor's acceptance of the trust, and it is not discretionary with the executor whether he will or will not act as trustee. (*Schenck* v. *Schenck*, 16 N. J. Eq. 174–182.) The court erred in the manner in which it dealt with the depositions of Fox and Ketcham, plaintiffs herein. (*Brooks* v. *Crosby*, 22 Cal. 43; *King* v. *Haney*, 46 Cal. 560; 13 Am. Rep. 217; *Jones* v. *Love*, 9 Cal. 68; *Bear River etc. Co.* v. *Boles*, 24 Cal. 363; *Stuart* v. *Lake*, 33 Me. 87.)

*A. N. Drown*, for Respondents.

The note and mortgage sued on were barred by the statute of limitations, and could not have been allowed by the executors. (Civ. Code Proc., sec. 1499; *Estate of Hidden*, 23 Cal. 363; *Dorland* v. *Dorland*, 66 Cal. 190; *Wise* v. *Hogan*, 77 Cal. 187; *Mull* v. *Van Trees*, 50 Cal. 549; *Estate of Hill*, 26 N. Y. St. Rep. 290; *Butler* v. *Johnson*, 111 N. Y. 212.) Considered as a suit in foreclosure, the action was completely barred. (*Lent* v. *Morrill*, 25 Cal. 500; Code Civ. Proc., sec. 337; *Bull* v. *Coe*, 77 Cal. 60; 11 Am. St. Rep. 235; *Brown* v. *Willis*, 67 Cal. 235; *Porter* v. *Muller*, 65 Cal. 512; *Bartlett* v. *Cottle*, 63 Cal. 366; *Biddel* v. *Brizzolara*, 64 Cal. 362; *Hall* v. *Arnott*, 80 Cal. 353, 354; *Wormouth* v. *Hatch*, 33 Cal. 121; *Pendleton* v. *Rowe*, 34 Cal. 149; *Wells* v. *Harter*, 56 Cal. 343.) Considered as an action to enforce a rejected claim against the estate of Tay, it was likewise barred. (Code Civ. Proc., secs. 1490, 1493, 1497; *Ellis* v. *Polhemus*, 27 Cal. 354, 355.) An executor or administrator appointed in a foreign jurisdiction cannot maintain a suit in the

courts of other states; and the word "foreign" is used in each state to designate all jurisdictions and laws without tself. (Wiltsie on Foreclosures, p. 122, sec. 108; *Normand's Adm'r* v. *Grognard*, 17 N. J. Eq. 425.) An executor appointed in another state has not, as such, any authority beyond the sovereignty by virtue of whose laws he was appointed, and therefore cannot foreclose a mortgage by equitable action in this state, without taking out letters testamentary or of administration in some probate court within the state. (Wiltsie on Foreclosures, p. 123, sec. 108; *Parsons* v. *Lyman*, 20 N. Y. 112; *Petersen* v. *Chemical Bank*, 32 N. Y. 21, 43; 88 Am. Dec. 298.) As between the executors themselves, there is no trust relation, as each executor had a right to receive the debts due to the estate and all other assets which should come to his hands; and each is answerable to the estate for the assets which he receives. (*Edmonds* v. *Crenshaw*, 14 Pet. 166; *Hope* v. *Jones*, 24 Cal. 93; *Abila* v. *Burnett*, 33 Cal. 659.) Executors are not liable to each other; but each is liable to the *cestuis que trust* and devisees to the extent of the funds received by him. (*Edmonds* v. *Crenshaw*, 14 Pet. 166.) The appellants are precluded by the statute of this state from being examined as witnesses "as to any matter of fact occurring before the death of Tay," which took place April 22, 1883. (Code Civ. Proc., sec. 1880, subd. 3.) This section applies even to nominal parties. (*Blood* v. *Fairbanks*, 50 Cal. 420.) The incompetency created by this section is, however, only limited and partial. The parties may be witnesses; may be examined as to all other facts than those prohibited; may be, indeed, examined as to preliminary and incidental matters—not being the matters in issue—which relate to a date anterior to the death. (*Roche* v. *Ware*, 71 Cal. 379; 60 Am. Rep. 539; *Knight* v. *Russ*, 77 Cal. 413.)

The Court.—After hearing in Bank and further consideration of the case, we are satisfied with the con-

clusion reached in Department One, and ·with the opinion there delivered by Mr. Justice Paterson.

The matters upon which the plaintiffs rely to relieve them from the bar of the statute of limitations may be deemed to have been pleaded in answer to the affirmative matters alleged in the answers of the defendants. There being no replication, such affirmative matters are taken as controverted. (Code Civ. Proc., sec. 462.)

The judgment and order are reversed, and the cause remanded for a new trial.

The following is the opinion above referred to, rendered in Department One on the 12th of August, 1890: —

PATERSON, J.— Charles J. Fox was associated in business with G. H. Tay, Henry Brooks, and Oscar Backus, in San Francisco, up to the time of his death, which occurred in June, 1870. In his last will and testament he appointed the plaintiffs, A. J. Fox, Enoch Ketcham, and G. H. Tay, his executors. They all appeared before the surrogate of Union County, New Jersey, where Fox resided and died, and qualified as executors. An inventory was made out, signed, and filed by Fox and Ketcham in April, 1872, in which the estate was shown to consist of the mortgage hereinafter referred to, valued at $33,000, and a one-fourth interest in the accounts of the partnership, amounting to $17,802.92; but the latter, being considered nearly worthless, was valued at only $1,000 in the inventory. After he qualified as executor, Mr. Tay returned to San Francisco, and entered into correspondence with the executors in New Jersey concerning the settlement of the interest of the deceased in the partnership business. On June 3, 1871, he executed and delivered to them the promissory note in suit for thirty-three thousand dollars, payable five years after date to "Enoch Ketcham and Alanson J. Fox, trustees," together with the mortgage sought to be foreclosed

herein; and on the same day Fox and Ketcham gave to him the following receipt:—

"New York, January 3, 1871.

"Received from Tay, Brooks & Backus $33,000 for account of estate of Charles J. Fox.

"$33,000.                              "Alanson J. Fox.

                                       "E. Ketcham."

During his lifetime Mr. Tay paid the interest every six months through his agent, J. W. Sullings, who was book-keeper for E. Ketcham & Co., of New York. The last check for this purpose was given January 11, 1883, and Mr. Tay died in April following. Although the interest money was sent in the name of George H. Tay & Co., it was charged to Tay's individual account on the books of the firm. In due time after the death of Mr. Tay, the surviving executors presented their claim to his executors, but it appearing to the latter that the claim was barred by the statute of limitations, they declined to allow it. Thereupon this action was commenced.

By its terms the note matured January 3, 1876, and, of course, unless the relations of the parties to themselves and to the fund in controversy can be looked into, it became barred January 3, 1880. We think that the defendants were not entitled to claim the benefit of the statute of limitations. It is entirely clear to our minds that Tay, in his lifetime, occupied such a relation of trust towards the *cestuis que trustent* and executors under the will of Charles J. Fox, and to the fund which constituted the consideration of the note and mortgage in suit, that he could not have pleaded the statute of limitations, and his representatives stand in no better position. In qualifying as executors before Tay left New Jersey, the executors promised on oath "to make and exhibit unto the surrogate's office of the county of Union a true and perfect inventory of all and singular the goods, chattels, and credits, as far as the same have or shall come to their possession or knowledge, or to the

possession of any other person or persons, to their use, to their knowledge." Afterwards an inventory was filed, in which the estate was represented as consisting of this thirty-three-thousand-dollar note and mortgage, and one thousand dollars in accounts. It is true, this inventory was signed only by Fox and Ketcham, and there is nothing to show whether Tay had any knowledge of its contents; but the evidence shows conclusively, we think, that the latter always considered that the fund represented by the note and mortgages was a portion of the assets of the estate of Fox, deceased. Upon his return to California, Mr. Tay addressed a letter to Mr. Ketcham, in which he says, among other things:—

"*My Dear Ketcham,*—Yours of the 4th inst. is with me this A. M. Yesterday I received a letter from A. J. Fox, dated the 2d, both of about the same tenor, referring to and approving my proposition for the settlement of Charley's interest in our business. You will please write me at once, and tell me shall I make the mortgage in favor of Enoch Ketcham, trustee, or Alanson J. Fox, trustee, or Mrs. Emma F. Fox. My advice is, Ketcham or Fox. My advice as executor, of what I know would be the wish of Charley, as a friend of the widow and the little ones, is, Ketcham or Fox. All of my best judgment enjoins me to say Ketcham or Fox, and not Mrs. Emma F. Fox. If Ketcham, Fox, and Tay, as true friends of the dead Charley, wish the derivable income to be used economically, and to aggregate or enlarge for reinvestment and for re-accumulation, the mortgage should be in favor of Ketcham or Fox. . . . . Write at once. . . . . I trust the year upon which we have entered will be fruitful of happiness and prosperity for you and yours, my dear Ketcham, and that 1871 may be followed by very many more."

The letter from Fox, referred to, says: "Your proposition for the settlement of Charley's interest in the business of Tay, Brooks & Backus seems to be a

liberal one, and as favorable as he could expect.   I have
written to Mr. Ketcham that I am satisfied with your
offer, and wish him to write you about it, with such
suggestions as to details, etc., as he might think best.
. . . . I am very glad to know that Charley's family are
to have so ample a provision for their support."   On
the 1st of June, 1871, a statement headed "Charles J.
Fox, in account with Tay, Brooks & Backus," was sent
to Ketcham and Fox, as executors of the estate of C. J.
Fox, and signed by Tay, Brooks & Backus, showing a
balance to the credit of the deceased of $35,839.46, and a
one-fourth interest in accounts, amounting to $46,692.21.
Mr. Tay wrote on the back of the note and mortgage,
which he sent to New Jersey, the following: "The within
note and the mortgage given to secure its payment are
held by us in trust for Emma F. Fox, widow, and ——
and ——, minor children of Charles J. Fox, deceased,
and in accordance with their respective interests under
the will of deceased."   The names "Louisa Fox" and
"Sheridan Fox" were written in the blanks by the execu-
tors.   The telegrams directing payment of interest spe-
cify the purpose in various ways, and one says: "Pay
Ketcham interest Fox estate"; another, "Pay Tay's
mortgage interest."

Mr. Sullings testified that the statements were for-
warded to him in letters written by Mr. Tay, in the name
of George H. Tay & Co., and that he sent Mr. Tay a
statement of the payments of interest; that Mr. Tay di-
rected him, at the time he gave him a power of attorney,
to pay the interest on the note and mortgage, and the
other claims as they might arise, by giving checks on the
Market National Bank, signed "George H. Tay & Co."
For several years prior to the death of Fox, Backus and
Tay were the only partners in the business.   Mr. Backus
testified that he had nothing to do with sending any
telegrams, and knew nothing of any mortgage or any
liability on account of any mortgage; that Mr. Tay had

never spoken to him about any mortgage. The books of the firm were introduced in evidence, and Mr. Warner, one of the employees, testified that the items of interest therein pointed out were charged to the private account of Mr. Tay.

While Mr. Tay could not, by virtue of his appointment in New Jersey, administer upon any estate of Fox in this state, it was his duty to take charge of any personal asset of the estate which he found here, and send it to New Jersey for administration. Although a foreign executor may have no coercive power for the collection of assets in the jurisdiction in which he resides, yet if assets situated in that jurisdiction come into his possession by a voluntary payment or administration, he is bound to account for them in the domiciliary jurisdiction. (Schouler on Executors, sec. 175; *Parsons* v. *Lyman*, 20 N. Y. 103; *Wilkins* v. *Ellett*, 108 U. S. 258; *Wyman* v. *Halstead*, 109 U. S. 656.) Mr. Tay took the interest of the deceased in the partnership to himself, and gave his note and mortgage in evidence thereof. The change of form did not, in our opinion, change the real character of the property, so far as it was related to the estate of Fox. The note and mortgage were simply an asset in another form. If Mr. Tay had sold the property to another, received the money, and given this note and mortgage to the other executors, he would still have remained in possession of a fund belonging to the estate; or if he had sent the purchase-money to the executors in New Jersey, and at his request they had returned it to him as a loan, he would not have been any more a trustee than he was by receiving and holding it without the money having changed hands. "If a trustee receive any portion of the funds from a transaction, he must personally see to the application of them. He cannot pass them over to his co-trustee for investment or distribution; and if he do so, he will be personally responsible for the acts and

defaults of such co-trustee." (1 Perry on Trusts, sec.
418.) " By this rule, trustees may be liable to great
losses, while they can receive no profit; and the rule is
made thus stringent that trustees may not be tempted
from selfish motives to embark the trust funds upon the
chances of trade and speculation." (1 Perry on Trusts,
sec. 429.) If the money had been lost in speculation, all
the executors would have been liable therefor. It was
the duty of Tay to see that the estate received the fund
which he had collected. It would still be his duty to do
so if he were alive, and the fact that he had given a note
and mortgage would be no defense to an action therefor,
and the statute of limitations would be no defense. In
case of an express trust, the statute does not commence
to run until a repudiation of the trust. (*Hearst* v. *Pujol*,
44 Cal. 235; *Janes* v. *Throckmorton*, 57 Cal. 388; *Broder*
v. *Conklin*, 77 Cal. 339; *Bacon* v. *Rives*, 106 U. S. 99; 1
Perry on Trusts, sec. 863.) Mr. Tay not only did not put
himself in hostility to the trust, but recognized it by
punctually paying the interest as it fell due up to the
time of his death. By qualifying as trustee under the
will of Fox, he became the trustee of an express trust.
He was required by the terms of the will to invest the
proceeds of the estate for the benefit of the wife and
children of Fox, and he did so by taking the fund unto
himself, and paying interest thereon. The form in
which the transaction was conducted could not wipe out
the fiduciary relation. If he had kept the fund without
giving any written promise, he would not have been re-
leased from his obligation to account to the estate of
Fox, nor could he have shielded himself behind the plea
of the statute of limitations, without express, open repu-
diation of the trust. As stated before, it was as much
his duty to protect and preserve the estate as it was the
duty of his co-executors. The evidence all shows that
Mr. Tay himself recognized this responsibility, and in-
tended to live faithfully up to it. It cannot be said that

he took no further action or interest in the matter than to qualify as trustee. His letters indicate the liveliest interest in the settlement of the estate, and in the welfare of the widow and children. There is no merit in the contention that the firm settled for the Fox interest in the partnership, and sent the money to the executors in New Jersey. It is true that the receipt given by the executors would, unexplained, indicate that such was the fact, but the evidence in the case, considered as a whole, shows beyond a doubt that the executors never received anything on account of the thirty-three-thousand-dollar interest in the partnership, except the note and mortgage.

We do not think it was necessary for the plaintiffs to take out letters testamentary here. They are endeavoring herein to secure trust moneys which came into the hands of their co-trustee since the death of the decedent, and are prosecuting the suit as mortgagees under the terms of the mortgage made by the co-trustee himself. A trust will be enforced, if at all, only indirectly, and by the application of the rule of equitable estoppel. (*Barton* v. *Higgins*, 41 Md. 546; *Brown* v. *Gas-Light Co.*, 58 Cal. 426; *Hall* v. *Harrison*, 21 Mo. 227; 64 Am. Dec. 225.) The case of *Lewis* v. *Adams*, 70 Cal. 403, 59 Am. Dec. 423, does not hold contrary to this view. It is authority simply for the proposition that the executor cannot, as such, prosecute an action in a foreign jurisdiction on a cause of action accruing to his testator. Here the claim is not one which accrued to the testator, but it accrued to his executors after his death. It is an asset which came into the hands of the co-trustee without administration. He was entitled to receive it, and there being no claim of any kind, either by creditor or distributee in this state, it was his duty, and is the duty of his representatives, to turn it over for distribution according to the laws of the state of New Jersey. (*Estate of Apple*, 66 Cal. 432.)

The court did not err in excluding the depositions. The appellants were precluded by the statute from being examined as witnessess "as to any matter of fact occurring before the death of Tay." The incompetency thus created is only limited and partial, and the parties could testify to any facts occurring subsequent to the death of Tay. We see nothing in the stipulations which operated as a waiver of the objections made at the trial. In view of what has been said, it is unnecessary to pass upon the question as to whether the acknowledgments alleged and proved had the effect claimed for them by the appellants. Judgment and order reversed, and cause remanded for a new trial.

Fox, J., and Works, J., concurred.

Rehearing denied.