(October 30, 1926.)

N. W. SCHOFIELD, Appellant, v. DANIEL S. SPENCER, Defendant and Respondent; P. L. WILLIAMS and JOSEPH R. SHARP, Executors of the Estate of JOHN SHARP, Sr., Deceased, Intervenors and Respondents.

[253 Pac. 833.]

Vendor and Purchaser — Marketable Title — Trusts — Purchase with Knowledge of Trust Relation.

    1. Purchaser under agreement for purchase of real property is entitled to receive marketable title.

    2. Purchaser of real property from one holding it in trust for another with knowledge of trust relation will not be ac-corded protection of *bona fide* purchaser, but will be deemed trustee for benefit of *cestuis que trust* to extent of such equitable interest.

    3. Showing that deed from holder of legal title to purchaser was made at request of executors or estate of deceased holder of equitable title was insufficient to pass good title, in absence of proof that executors were *cestuis que trust.*

    4. Where purchaser contracting to buy real property had knowl-edge that actual ownership of land was in deceased and that another held legal title, trial court's conclusion as matter of law that deed from person holding legal title conveyed good and mar-ketable title to purchaser was erroneous.

---

Publisher's Note.

    1. Right of vendee of real property to marketable title, see notes in 132 Am. St. 991; 38 L. R. A., N. S., 1. See, also, 27 R. C. L. 482.

    2. See 26 R. C. L. 1296.

    3. See 26 R. C. L. 1296.

See Trustees, 39 Cyc., p. 355, n. 52; p. 373, n. 95; p. 374, n. 97; p. 375, n. 1.

Vendor and Purchaser, 39 Cyc., p. 1442, n. 82; p. 1476, n. 33.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles F. Reddoch, Judge.

Action to recover money paid on contract for the sale of land. Judgment for defendants and intervenors. *Reversed.*

J. G. Watts and Robert W. Beckwith, for Appellant.

A deed from one who holds a legal title in trust for the benefit of an estate does not convey a marketable title where the purchaser knows the equitable title is in the estate, unless the abstract or record shows that the trustee is authorized to make the deed. (Maupin on Marketable Titles, 3d ed., p. 771; *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998, 30 L. R. A., N. S., 343; *Coonrod v. Studebaker,* 53 Wash. 32, 101 Pac. 489; *Snowden v. Derrick,* 14 Cal. App. 309, 111 Pac. 757; Warvelle on Abstracts, 2d ed., 30.)

In the absence of an express provision indicating the character of a title provided for by a contract of sale of real property, the implication is that a good or marketable title in fee simple is intended in all executory contracts. (*Brady v. Bank of Commerce,* 41 Okl. 473, Ann. Cas. 1915B, 1019, 138 Pac. 1020; *Durham v. Hadley,* 47 Kan. 73, 27 Pac. 105; *Bell v. Stadler,* 31 Ida. 568, 174 Pac. 129; *Colpe v. Lindblom,* 57 Wash. 106, 106 Pac. 634; *Speakman v. Forepaugh,* 44 Pa. 363; *McNutt v. Nellans,* 82 Kan. 424, 108 Pac. 834; Sugden on Vendors, chap. 10, p. 3.)

P. L. Williams, for Respondents.

A trustee holding the title of property by a conveyance absolute in form and containing no limitations or reservations may, for a valuable consideration, pass a good title to a grantee without the consent of the *cestui que trust,* where the grantee is ignorant of the trust, and such title may likewise be passed where the grantee has knowledge of the trust, if the consent of the *cestui que trust* is given, and such consent may be given either orally or in writing. (Washburn on Real Property, secs. 1502, 1503, and cases cited, among them *Arrington v. Cherry,* 10 Ga. 429.)

WM. E. LEE, C. J.—With the understanding that certain real property in Owyhee county belonged to the estate of John Sharp, Sr., deceased, appellant Schofield agreed with the executors to pay $4,000 therefor. He paid $1,000 and signed three promissory notes for the balance, payable to the "executors of the estate of John Sharp, Sr., deceased." The notes, together with a deed and other papers, were put in escrow with instructions to deliver them to Schofield on the final payment of the three notes. The deed was executed by Daniel S. Spencer, in whose name the record title stood. Schofield objected to the deed, and commenced an action for the return of the money paid and the three notes. Spencer appeared and answered, alleging, among other things, that he held the title to the land in trust for the estate of Sharp. The executors intervened and demanded judgment against Schofield on two of the notes. Judgment was obtained by Spencer and the executors, from which this appeal is prosecuted.

[1] The form of the deed was not the subject of agreement between the parties other than that it was implied and is not denied that appellant was to receive a full and complete title to the real property, a title in fee simple. The lower court found as a matter of law that the deed tendered conveyed "a good and marketable title." There can be no doubt that appellant was entitled, under the agreement, to receive a marketable title. (*Brady v. Bank of Commerce,* 41 Okl. 473, Ann. Cas. 1915B, 1019, 138 Pac. 1020; *Speakman v. Forepaugh,* 44 Pa. 363; Maupin on Marketable Titles, sec. 283.) The abstract of title furnished appellant shows that Spencer held title under a deed absolute in form and without restrictions or limitations. However, the record is conclusive that appellant had been informed by the executors and knew that Spencer was a mere trustee for the estate of Sharp and had no beneficial interest whatever in the property. The abstract of title neither made reference to the estate of Sharp nor showed any administration of his estate.

The question for determination is whether one who holds title to real property under a deed absolute in form and containing no limitations or reservations, but who in fact is a trustee and holds title in trust for the benefit of the estate of a deceased person, may convey good title, in the absence of a showing of consent to the conveyance on the part of *cestui que trust*, where the grantee knows of the existence of the trust.

[2] It is well settled that a purchaser of real property from one who holds it in trust for another, with knowledge of the existence of the trust relation, will not be accorded protection as a *bona fide* purchaser, but will be deemed a trustee for the benefit of the *cestui que trust* to the extent of such equitable interest.

[3] Conceding, as contended by respondents, that in the case of "simple or dry" trusts, a deed by a trustee, with the consent of the *cestui que trust*, will pass a good title (2 Washburn on Real Property, 6th ed., secs. 1490, 1502; *Arrington v. Cherry*, 10 Ga. 429; *Parker v. Converse*, 5 Gray (Mass.), 336; 39 Cyc. 355), there was no consent of *cestuis que trustent* to the execution of this deed. That the deed was made at the request of the executors of Sharp's estate will not aid respondents, for it was not shown that such executors were the *cestuis que trustent*. One who has contracted to sell and give a good and marketable title to real property, which stands on the public records in the name of another but which is actually held in trust for the benefit of the estate of a deceased person, cannot require the purchaser, who knows of the existence of the trust relation, to accept the deed of the trustee, as a conveyance of a good and marketable title to the property, where the *cestuis que trustent* do not join in or consent to the conveyance. (39 Cyc. 373, subd. b (1); 26 R. C. L. 1296, sec. 148; *Wormley v. Wormley*, 8 Wheat. (U. S.) 421, 5 L. ed. 651; *Graff v. Castleman*, 5 Rand. (26 Va.) 195, 16 Am. Dec. 741; *Snyder v. Collier*, 85 Neb. 552, 133 Am. St. 683, 123 N. W. 552; and note to *Tyler v. Herring*, 19 Am. St. 266.)

[4]  The purchaser contracted to buy the real property, and was to receive a good title thereto, both legal and equitable.  In view of his knowledge that actual ownership of the land was in *cestuis que trustent* and that Spencer held the mere legal title, the deed from Spencer could convey nothing more than the legal title.  The court erred in concluding as a matter of law that the deed " . . . . conveys a good and marketable title to the plaintiff. . . . . " It is unnecessary to determine other questions presented.

Judgment reversed.  Costs to appellant.

Givens and Taylor, JJ., concur.

BUDGE, J., Dissenting.—In April, 1920, appellant entered into negotiations with respondent Williams, one of the executors of the estate of John Sharp, Sr., deceased, for the purchase of certain land situated in Owyhee county.  An oral agreement was reached, under the terms of which appellant was to pay $4,000 for the land and water rights, and in June, 1920, appellant paid to Williams $1,000 cash on the purchase price and thereafter signed three notes for $1,000 each, payable to respondents Williams and Sharp in one, two and three years from date.

The parties later executed an escrow agreement, directed to the Bruneau State Bank of Bruneau, Idaho, as escrow holder, which recited that a deed to the property, executed by Daniel S. Spencer in favor of appellant was therewith delivered to it, together with a certificate of water stock; that appellant was delivering his three notes, each for $1,000 payable one, two and three years after date, said notes being made payable to Williams and Sharp, executors of the estate of John Sharp, Sr., deceased; that the bank was requested to hold all of said papers subject to the payment of the notes by appellant, and when the same had been so paid, to deliver the enclosed deed and certificate of stock to appellant; that in the event the notes, or any of them, were not paid at maturity, to advise the undersigned, Williams, so that he and his coexecutor might take such action as they might be ad-

vised, looking to the adjustment of. such default on the part of appellant.

Possession of the land was entered into by appellant, and an abstract of title thereto was furnished him. The record shows that he knew Williams was representing the estate of John Sharp, Sr., deceased, and that he was advised by Williams that the legal title to the property stood in the name of Daniel S. Spencer, but in trust for the estate of John Sharp, Sr., deceased, and that upon request of the executors Spencer would execute a conveyance thereto. It also appears that at the first conference between appellant and Williams the form of deed to be executed to appellant was not mentioned or discussed, but it is admitted by respondents that it was implied that a conveyance should be made which would vest the title to the property in appellant.

Spencer executed a conveyance to the property in favor of appellant, a grant, bargain and sale deed, and it was this deed which was forwarded to the Bruneau State Bank as escrow holder, under date of July 6, 1920, a copy of the same, unsigned, having been previously mailed to appellant. Under date of August 16, 1920, Williams wrote to appellant advising him that he, Williams, had received a letter from the cashier of the bank acknowledging receipt of the deed and advising that appellant had executed the notes and escrow agreement, the cashier further stating that he wanted appellant to pass upon the form of deed. The letter of Williams to appellant then continues:

"Some time ago, I sent you a copy of the deed so that you could compare it with the original and see that it was a true copy. It is a bargain and sale deed only, but that as completely conveys all title as a warranty deed would, the warranty merely imposing upon the grantor in the deed, liability for the purchase money should the title fail. I take it the deed as sent you,. as I told you, certainly conveyed all the title Mr. Spencer ever had, and is in same form of the deed which he received, as well as the same form which the company conveyed first to John C. Sharp and he afterwards conveyed by like deed to John Sharp and he to

Mr. Spencer. I think the abstract which I sent you showed that these deeds were in form of bargain and sale, the same as that made to you. Mr. Spencer at the time of receiving the deed made a written declaration and delivered to us to the effect that he held the property merely as trustee for the estate of the senior John Sharp, of whose estate I am one of the executors. The John Sharp who conveyed this property to Mr. Spencer was a son of the John Sharp whose estate owned this property."

Thereafter Williams wrote appellant several letters requesting him to express his satisfaction with the deed, but no reply was received. On December 11, 1920, appellant again called on Williams at the latter's office in Salt Lake City, Utah, at which time appellant expressed his desire to have a warranty deed for the property. Later, and on February 18, 1921, appellant wrote to Williams from Bruneau stating that he did not consider that he had been given a satisfactory title to the property, and requested to be furnished a warranty deed. Williams replied in a letter dated February 21, 1921, and related the details of their negotiations, stating that appellant called attention to the form of the deed for the first time at their conference in Salt Lake on December 11, 1920. Correspondence continued between the parties, appellant demanding a warranty deed, and Williams reiterating that the form of deed made was as effective to convey title to the land as would a warranty deed with the fullest covenants, and that appellant's title was perfect. Thus matters continued until the filing by appellant of a complaint against Spencer, only, on September 6, 1921, to have the contract rescinded and for a recovery of the money paid thereon, together with the notes which had been executed and placed in escrow.

Spencer answered the complaint, and denied specifically each and every of the allegations therein, except that he admitted appellant took possession of the property. As a further defense Spencer alleged that he held only the legal title to the property, in trust for the benefit of the estate of John Sharp, Sr., deceased, and that at the time of the con-

veyance of said property to him he had executed a declaration of trust and delivered the same to the executors of said estate, which declared that he, Spencer, held said property in trust for the said estate and would convey the same upon request of the executors; that at the request of Williams, as one of the executors of said estate, he executed a deed to said property in favor of appellant and delivered the same to Williams. The answer of Spencer further alleged that he never was personally interested in said property, and disclaimed having any personal interest whatsoever therein.

By leave of the court a complaint and supplemental complaint, in intervention, were filed by the executors of the estate of John Sharp, Sr., deceased, to wit, Williams and John Sharp, Jr. This complaint alleged that the estate of which they were executors was the equitable owner of the land in question, but that the legal title thereto had been vested in Spencer, in trust for the benefit of the estate; alleged the execution by Spencer and delivery to them of the declaration of trust hereinbefore referred to; that they had been, as executors of said estate, in possession and control of said property, and had for several years paid, out of the funds of the estate, all taxes, water assessments, etc.; set out the details of negotiations for the purchase of the property by appellant, and alleged that the deed executed by Spencer in favor of appellant invested the latter with the absolute and full legal title to the property; that two of the notes executed by appellant had matured and were payable; that water assessments which became due after the date of said contract had been paid by them, in order to avoid default in the payment thereof; and prayed for judgment in the sum of the two notes then due, together with interest, and interest on the third note, and for the amounts paid by them to cover water assessments.

After demurrer to the complaint in intervention had been overruled, appellant answered, the specific denials, admissions and affirmative allegations of which answer are· unnecessary to be here set out for an understanding of the issues involved, and in view of the evidence and findings of fact, no objections to which are raised on this appeal.

The cause was tried to the court, which found in favor of intervenors and respondents upon all the issues presented by the pleadings. It may be said at the outset that the court was clearly justified in finding in favor of respondent Spencer, as there was no evidence produced upon the trial which would render Spencer liable personally, and it does not appear to be any part of the contentions of appellant here.

Appellant's specifications of error are embodied in the statement contained in his brief that there are two paramount questions involved in the case: First, does the deed in escrow convey an absolute fee-simple title to the purchaser, he having notice that the equitable title was in the estate of John Sharp, Sr.; and, second, admitting that the deed conveys a complete title, what remedies inure to the executors upon failure of the purchaser to pay his notes at maturity? Under the first question it is contended that a deed from one who holds a legal title in trust for the benefit of an estate does not convey a marketable title where the purchaser knows the equitable title is in the estate, unless the abstract or record shows that the trustee is authorized to make the deed.

The contract in question was one entered into between appellant and the executors of the estate of John Sharp, Sr., many years after the latter's death, and concerned property the title to which vested in the estate of the deceased after his death, as shown by the evidence. Under such circumstances it was not necessary for the executors in this action to take out ancillary probate proceedings in this state or to have made of record any of the probate proceedings, because the agreement was one made with the executors, and, as stated, did not concern John Sharp, Sr., deceased, personally, as to any contract made or specific property acquired by him during his lifetime. (*Moore v. Kraft*, 179 Fed. 685; *Talmage Adm. v. Chapel*, 16 Mass. 71; *Fox v. Tay*, 89 Cal. 339, 23 Am. St. 474, 24 Pac. 855, 26 Pac. 897; *Bright v. Currie*, 7 N. Y. Sup. Ct. Rep. (5 Sand.) 433.)

The abstract furnished to appellant showed title to the property to be in Spencer, and the latter's declaration of trust showed that he held the title in trust for the benefit of the estate, and that he would upon request of the executors make conveyance of the property. When Spencer was so requested by the executors to deed the property to appellant there was conveyed by his deed not only the legal title but the equitable title as well, for, by the request of the executors and the deposit of the deed in escrow by them, the whole of the title to the property, both legal and equitable, was thereby aliened to appellant. In short, the deed of Spencer, holder of the legal title, or trustee, at the request of the executors of the estate, the *cestuis que trustent,* invested appellant, the grantee, with good title, upon the performance by appellant of the conditions for payment of the purchase price named in the escrow agreement. (2 Washburn on Real Property, 6th ed., secs. 1502, 1503, pp. 485, 486, and cases cited; *Arrington v. Cherry,* 10 Ga. 429.)

The agreement of the parties for the purchase and sale of the land did not include a stipulation as to the form of deed to be given to appellant. It was of course understood that by the purchase of the land title thereto would be vested in appellant. It was long after the negotiations for the purchase had been completed, part payment made, the notes executed for the balance due, the escrow agreement signed, an abstract furnished to and a copy of the deed received by appellant, before he began to make complaint about the form of deed, because of his fear that it did not convey a title to him free from defect. As before stated, however, the abstract furnished to appellant showed that title to the property was in Daniel S. Spencer and that the latter's two immediate predecessors held the same by deeds of *grant,* bargain and sale, which same form of deed was executed by Spencer to appellant. Our statutes upon this form of conveyance remove any semblance of doubt, if any such there could be said to be, as to the nature or kind of title passed. C. S., secs. 5376, 5377, provide that a fee-simple title is presumed to be intended to pass by a *grant* of real

property, unless it appears from the grant that a lesser estate was intended, as well as any after-acquired title; and C. S., sec. 5384, provides that from the use of the word "grant" in any conveyance by which an estate of inheritance, possessory right or fee simple is to be passed, it is implied that the grantor covenants that such estate is free from encumbrances done, made or suffered by the grantor, or any person claiming under him. I am of opinion, therefore, that an absolute fee simple and marketable title was conveyed to appellant by the deed executed by Spencer, and that such title would have vested in appellant upon the performance by him of the conditions named for payment of the purchase price in the escrow agreement.

This brings me to the second question raised by appellant, namely, admitting that the deed conveys a complete title, what remedies inure to the executors upon failure of the purchaser to pay his notes at maturity? It is contended on this point that the vendors' remedies are either to withdraw the deed and annul the contract or to foreclose the vendors' lien on the equitable interest of the purchaser, but that a general judgment cannot be recovered against him. In determining this question resort should be had to the written agreement of the parties, for admittedly by that instrument they intended to express the terms by which they were to be bound in the consummation of the contract, and by their execution of the same acknowledged acquiescence in it. In this connection it must be noted that the cases cited by appellant upon this point are of no particular benefit to him as authorities supporting his contention, for the reason that the decisions therein are bottomed upon the particular facts, or terms of the agreements, there involved.

Under the escrow agreement executed by the parties in the instant case the Bruneau State Bank became the agent of each of the contracting parties when the escrow agreement was deposited therein. The deposit of the escrow agreement was irrevocable, and it could neither be withdrawn by appellant nor by respondents. The vendors did not reserve the right to withdraw the deed upon noncompliance with

the terms of the escrow agreement by appellant. They did, however, reserve the right, in case the notes, or any of them, were not paid at maturity, to take such action as they might be advised, looking to the adjustment of any default on the part of appellant. It is obvious, therefore, that any action might have been taken by the vendors so long as compatible with recognized and proper legal remedies applicable in such cases. I think that the vendors, under the facts of this case, had the right to enforce payment of the amounts then due upon the purchase price of the property by a suit in equity to enforce their vendors' lien, or that they might waive their security and maintain an action at law to enforce the payment of the debt, which latter means was adopted.

In conclusion, I think it is plain that appellant, had he performed his part of the contract for the purchase of the property, would have obtained an absolute fee simple and marketable title thereto, and that upon his failure to perform according to the terms of the agreement respondents were entitled to recover the moneys due on the purchase price, together with the sums paid by them to cover water assessments against the property after the contract was made. Appellant desired to purchase the property for the price agreed upon, and in acceptance of his offer a good and sufficient conveyance of the same was made to him, and complete title thereto would have vested in him upon performance of the conditions stipulated and agreed to. As has been frequently said, courts cannot make contracts for parties,—they can only construe them.

From what has been said it follows that the judgment of the trial court should be affirmed.

(March 7, 1927.)

### ON PETITION FOR REHEARING.

WM. E. LEE, C. J.—It is insisted that the judgment in favor of Spencer and against Schofield should have been affirmed. A study of this question has convinced us that in this respect counsel for intervenors is correct. The judg-

ment of the trial court, dismissing appellant's action against Spencer, with costs, is affirmed.   Otherwise we adhere to the original opinion.

Givens, Taylor and T. Bailey Lee, JJ., concur.

BUDGE, J., Concurring in Part.—In what is designated "on petition for rehearing" a majority of the court concludes that the judgment dismissing appellant's action against Spencer should be affirmed.   In this I concur.   With the remainder of what the court has to say, I dissent.   My views are expressed in the dissenting opinion, above, to which I adhere.