[Civ. No. 4438. First Appellate District, Division One.—August 16, 1923.]

GEORGE P. BEDELL, Respondent, v. JACOB C. MORRIS, Appellant.

[1] GOODS SOLD AND DELIVERED—RECOVERY OF PRICE—PARTNERSHIP— ESTOPPEL — FINDING — EVIDENCE.—In this action to recover for goods sold and delivered, the evidence was sufficient to support the finding that one of the defendants held himself out or permitted himself to be held out as a partner of his codefendant, and that plaintiff's assignors relied upon such representation.

[2] PARTNERSHIP—STATUS OF PARTNER—ESTOPPEL—CHARACTER OF REPRESENTATIONS OR ACTS—INTENT.—Representations or acts to hold a party liable as a partner to third persons need not be actuated by the actual intent to deceive; it is sufficient if the course of conduct is such as to induce a reasonable and prudent man to believe that which the conduct would imply.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goldman, Nye & Surr for Appellant.

Marvin C. Hix for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the plaintiff upon two assigned accounts for goods, wares, and merchandise alleged to have been furnished to the firm of J. Morris & Co., of which firm it is alleged that the appellant herein had held himself out to the assignors of the plaintiff herein as being a member. Upon the trial of the cause the court sustained by its findings plaintiff's assign-

ors, in this regard, and rendered its judgment accordingly in plaintiff's favor. Upon this appeal the appellant contends that the evidence does not sustain the findings of the trial court in this regard.

The evidence in the case discloses that one J. Morris, prior to his death in 1919, had conducted a brush and broom business in the city and county of San Francisco, under the name and style of J. Morris & Co. He purchased brooms and brushes from William James and Walter Rueger, the latter doing business under the name and style of Sunset Broom & Brush Co. Shortly before his death J. Morris took his son Irving Morris with him and called on James and Rueger, informing them that he intended taking Irving in as a partner later on after he had learned the business. After the death of J. Morris, Irving Morris and Jacob C. Morris, an elder brother, called on James and Rueger with regard to the conduct of the business. It appears that J. Morris had left some bills unpaid to both James and Rueger and at these conferences they were assured by Jacob C. Morris that the bills would be paid. There is a sharp conflict in the evidence as to just what was stated at these conferences, appellant insisting that no representation that Jacob C. Morris would be identified with the business was made. On the other hand, James and Rueger testified that they were led to believe that the bills would be paid; that the business would be conducted as J. Morris & Co., Jacob C. Morris handling the financial end and Irving Morris attending to the selling. The business was continued with its office at the place of business of Jacob C. Morris under the name of J. Morris & Co., checks were signed by Jacob C. Morris as J. Morris & Co., the books of the firm were kept by him, and orders for brooms and brushes were given by both of them. The amounts due and owing by the firm at the time of the death of J. Morris were paid off after the business was again continued, and further credit was extended, as testified by James and Rueger, on account of the fact that they knew Jacob C. Morris to be a successful business man and financially responsible, and notwithstanding the fact that they knew Irving Morris lacked experience and was financially irresponsible. The account with James ran from July 19, 1920, to December 15, 1920, and the unpaid balance amounted at the latter date to $534.13; the account with Rueger, doing

business under the name and style of Sunset Broom and Brush Co., ran from November 23, 1920, to June 17, 1921, the unpaid balance amounting to $842.96. Suit was brought for these amounts by plaintiff as assignee of James and Rueger. The court found that said business had been carried on as a copartnership under the name and style of J. Morris & Co.; that the goods had been sold them at their instance and request, and as conclusions of law therefrom decided that plaintiff was entitled to judgment for the amounts prayed and interest. Judgment was accordingly rendered in favor of plaintiff and against defendants, and each of them, in amount of $1,506.35. From this judgment Jacob C. Morris appeals.

[1] Appellant relies mainly on the ground that the evidence is insufficient to support the finding that appellant held himself out or permitted himself to be held out as a partner of Irving Morris. This is summarized in two points: (I) There was no intention of appellant to represent himself as a partner in J. Morris & Co. or to mislead respondent's assignors. (II) There was no representation by appellant which amounted to a representation that he was a partner in J. Morris & Co. In support of his contention appellant urges that to create a liability on his part the law requires intentional or deliberate deception or fraud, or gross negligence amounting to culpability as the basis of an equitable estoppel, and in explanation of his acts and conduct states that his action in identifying himself with the business was simply that of lending a helping hand to members of his family and that he in no way intended or expected to be a partner. Appellant seems to rely upon the proposition that it requires a course of conduct with the actual intent to deceive or defraud; or gross negligence amounting to culpability. Section 2444 of the Civil Code reads as follows: "Anyone permitting himself to be represented as a partner, general or special, is liable, as such, to third persons to whom such representation is communicated, and who, on the faith thereof, give credit to the partnership."

That is precisely the case at bar; the only thing remaining to be proven was whether appellant "permitted" himself to be represented as a partner and the reliance by third parties upon such representation. [2] Representations or

acts need not be actuated by the actual intent to deceive; it is sufficient if the course of conduct is such as to induce a reasonable and prudent man to believe that which the conduct would imply. The proposition is well supported by decisions and learned text-writers (*Seymour* v. *Oelrichs,* 156 Cal. 782 [134 Am. St. Rep. 154, 166 Pac. 88]; *Carpy* v. *Dowdell,* 115 Cal. 677 [47 Pac. 695]; *Dickerson* v. *Colgrove,* 100 U. S. 580 [25 L. Ed. 618, see, also, Rose's U. S. Notes]; 2 Pomeroy's Equity Jurisprudence, 4th ed., p. 1645). It does not seem to be questioned but that James and Rueger extended further credit to the company in view of the fact that Jacob C. Morris was identified with the business. They so testified and we have nothing in contradiction thereof. This being so, the only question remaining is whether or not the acts and conduct of Jacob C. Morris were sufficient to lead James and Rueger to believe he was a copartner and assumed responsibility as such. This was a question of fact to be determined by the trial court upon the hearing. The court found that Jacob C. Morris represented and held himself out as a copartner of Irving Morris in the carrying on of the business as J. Morris & Co. The conflict in evidence having been resolved in favor of plaintiff and being amply supported by the record, we are not disposed to disturb the findings of the trial court in that regard.

The judgment is affirmed.

Tyler, P. J., and St. Sure, J., concurred.