[L.A. No. 29674. In Bank. Jan. 15, 1970.]

THOMAS L. BLACKMON, Plaintiff and Appellant, v.
LOUIS H. HALE et al., Defendants and Respondents.

## COUNSEL

Max Fink and Victor Sherman for Plaintiff and Appellant.

Matthew L. Hatfield, Robert H. Fabian, Harris B. Taylor, Peter J. Demos, Swanwick, Donnelly & Proudfit, Donald O. Welton and Michael M. Gless for Defendants and Respondents.

## OPINION

**TRAYNOR, C. J.**—Plaintiff Blackmon appeals from a judgment in favor of defendants Hale, Lee, United California Bank, and Bank of America entered in an action to recover $23,500 plus interest. He sought to recover this sum from defendants on the ground that each of them was liable for

the failure of defendant Adams to repay plaintiff $23,500 that plaintiff entrusted to Adams. A default judgment against Adams is not involved in this appeal.

In July 1961 James C. Adams, an attorney, undertook to represent plaintiff in the latter's proposed purchase of a note and mortgage on real property in Nevada, owned by H. H. Records. Plaintiff went to Adams at the suggestion of Records. At that time Adams practiced law in Lancaster in partnership with defendant Hale under the name of Adams and Hale. The two attorneys had been partners since 1952. From November 1958 to May 1961 they had a third partner, defendant Lee, and during that period the three practiced law under the name of Adams, Hale, and Lee. On May 31, 1961, Lee withdrew from the firm. Adams and Hale continued the practice under the name Adams and Hale until they dissolved the firm on August 31, 1961.

About the middle of July 1961 Adams told plaintiff that funds would be needed to make an offer for the Nevada note and mortgage. Plaintiff testified that he told Adams that he would put up the money, but he wanted the money placed in a trust account so that it would be available when needed. If the offer was not accepted, the money was to be returned. Adams instructed plaintiff to make a check payable to Adams and Hale Trust Account and said "in this manner that he could offer this money to these people and it would be available." On August 17 plaintiff purchased a cashier's check for $24,500 from the Bank of America, payable to the order of Adams and Hale Trust Account and mailed the check to Adams. On August 18 Adams endorsed the check "Adams and Hale Trust Account by J. C. Adams." Below that endorsement was rubber stamped "Pay to the order of California Bank; Adams, Hale and Lee Trust Account." The check was deposited in the Adams, Hale, and Lee Trust Account at the California Bank in Lancaster.

During the existence of the Adams, Hale, and Lee partnership the firm maintained a trust account at the California Bank, which later became the United California Bank, in the name of Adams, Hale, and Lee Trust Account. Withdrawals from the account were authorized on the signature of Hale alone or on the joint signatures of Adams and Lee. After Lee left the firm on May 31, Adams and Hale continued to use the same account under the same name for the deposit of trust moneys and did not open a separate trust account under the name of Adams and Hale. Before 1958 they had a trust account in the name of Adams and Hale at the same branch of the California Bank, but for several years that account had been either dormant or closed.

On August 31 Adams and Hale dissolved their partnership. On Septem-

ber 6 Adams asked Hale to sign a check for $21,386 drawn on the Adams, Hale, and Lee Trust Account and payable to the J. C. Adams Trust Account. Hale signed the check and delivered it to Adams. Adams used the check to open a new account at the Security First National Bank under the name of J. C. Adams Trust Account. Over the next four months he diverted this money to his own use.

Apparently plaintiff's proposed purchase of the note and mortgage was never carried out, and in due course plaintiff demanded the return of his $24,500. In April 1962 Adams paid plaintiff $1,000, leaving a balance due of $23,500.

### The Banks' Liability

Plaintiff seeks to hold the banks liable on three theories. He first contends that the cashier's check for $24,500 could lawfully be deposited only in the Adams and Hale Trust Account. Since the check was made payable in that name, he urges that the California Bank is liable to him for depositing the check in the Adams, Hale, and Lee Trust Account and that the Bank of America is liable to him for paying the check on the endorsement of the Adams, Hale, and Lee Trust Account.

Plaintiff analogizes the designation of the Adams and Hale Trust Account as the payee to a restrictive endorsement that precludes the endorsee from negotiating the instrument contrary to the restriction. (See Civ. Code, § 3117; superseded by Com. Code, §§ 3204-3206.) The check, however, was credited to the precise account for which it was intended at the time it was drawn. Plaintiff testified that he wanted the money deposited in a trust account where it would be available when needed. No specific account was designated until Adams instructed plaintiff to make the check payable to the Adams and Hale Trust Account. The destination of the check was intended by both parties, however, to be the trust account used by Adams and by the firm of Adams and Hale for the deposit of trust moneys. That trust account was the Adams, Hale, and Lee Trust Account. The incompleteness and irregularity of the name of the payee was inconsequential, for the check reached its intended destination. Plaintiff was not injured by the deposit of the funds in the Adams, Hale, and Lee Trust Account instead of the Adams and Hale Trust Account.

Plaintiff next contends that the banks are liable for payment of the check on an ineffective endorsement. He urges that the signatures of both Adams and Hale were required. The check was endorsed, Adams, Hale, and Lee Trust Account, the account for which the money was intended. It was also endorsed Adams and Hale Trust Account, by J. C. Adams. Although either Hale's signature or the signatures of both Adams and Lee were required to withdraw funds from the Adams, Hale, and Lee Trust Account, there is no evidence that the stamped endorsement was not authorized to effect a

deposit in the trust account. The banks are not liable for carrying out the intention of plaintiff and Adams by relying on the stamped endorsement in depositing the check.[1]

◼ Plaintiff finally contends that the California Bank had constructive notice of a possible misappropriation of trust funds when the proceeds of the cashier's check were deposited in an account with a name different from that of the payee, and that therefore the bank should have required the signatures of all the trustees of the Adams, Hale, and Lee Trust Account before allowing withdrawal of money from that account.

◼ If a deposit is made in a bank to the credit of a person as trustee, the bank is charged with notice that the funds are received in a fiduciary capacity. (*United States Fid. & Guar. Co.* v. *First Nat. Bank* (1912) 18 Cal.App. 437, 440 [123 P. 352]; *Keeney* v. *Bank of Italy* (1917) 33 Cal. App. 515, 518-519 [165 P. 735].) The bank is not liable for the misappropriation of trust funds by the trustee, however, unless the bank has knowledge, actual or constructive, of such misappropriation. (*Lynch* v. *Wells Fargo Bank & Union Trust Co.* (1931) 114 Cal.App. 565, 572-573 [300 P. 74]; *Southern Trust & Commerce Bank* v. *San Diego Sav. Bank* (1922) 60 Cal.App. 215, 219 [212 P. 385].) ◼ Since the bank properly deposited plaintiff's money in the Adams, Hale and Lee Trust Account, that act did not as a matter of law put the bank on notice of a possible misappropriation. The record reveals no other fact that would give the requisite notice. ◼ The bank is authorized to honor withdrawals from an account on the signatures authorized by the signature card, which serves as a contract between the depositor and the bank for the handling of the account. So long as the checks drawn on the account are signed in conformity with the signature card, and absent any knowledge of a misappropriation, the bank is free from liability for honoring a check drawn in breach of trust. (Fin. Code, §§ 952, 953; *Desert Bermuda Properties* v. *Union Bank* (1969) 265 Cal.App.2d 146, 150-153 [71 Cal.Rptr. 93].)

◼ The trial court correctly concluded that plaintiff failed to establish any basis for imposing liability on either of defendant banks.

### Hale's Liability

◼ At the time Adams received the cashier's check for $24,500 payable to the Adams and Hale Trust Account he was practicing law in partnership with defendant Hale. Adams deposited the check in the firm's trust account, and thereafter secured $21,386 from that account by means of

---

[1]Plaintiff objects to the trial court's finding that the cashier's check was a bearer instrument that needed no endorsement. Since we have determined that the check was properly endorsed, we need not decide whether it was a bearer or an order instrument.

a check signed by Hale. Hale's liability for Adams' misappropriation of plaintiff's money must be determined in the context of the two capacities in which Hale acted, namely, as a partner of Adams and as a cotrustee of the funds deposited in the trust account.

Hale's liability as a partner is governed by the Uniform Partnership Act. (Corp. Code, §§ 15001-15045.) Corporation Code section 15014 provides that "The partnership is bound to make good the loss: (a) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and (b) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership." Section 15015 provides that each partner is jointly and severally liable for everything chargeable to the partnership under section 15014. Accordingly, if Adams received plaintiff's money while acting within the scope of his apparent authority or the partnership received the money in the course of its business, Hale is jointly and severally liable for plaintiff's losses.

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner . . . for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership." (Corp. Code, § 15009.) ▪ The apparent scope of the partnership business depends primarily on the conduct of the partnership and its partners and what they cause third persons to believe about the authority of the partners. ▪ Ostensible agency or acts within the scope of the partnership business are presumed "where the business done by the supposed agent, so far as open to the observation of third parties, is consistent with the existence of an agency, and where, as to the transaction in question, the third party was justified in believing that an agency existed." (*County First Nat. Bank of Santa Cruz* v. *Coast Dairies & Land Co.* (1941) 46 Cal.App.2d 355, 366 [115 P.2d 988]; *Kamen & Co.* v. *Paul H. Aschkar & Co.* (9th Cir. 1967) 382 F.2d 689, 695.) ▪ The partnership will be relieved from liability for the wrongs of its partners acting individually when the third person has knowledge of the fact that he is dealing with the partner in his individual capacity. (Corp. Code. § 15009.)[2]

---

[2]Corporations Code section 15009 provides, in part: "(1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership. name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority. . . . (4) No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction."

In the present case if Adams was acting only in his individual capacity and plaintiff knew that he was acting solely in that capacity, the partnership of Adams and Hale and Hale are not liable. ■ Sound public policy dictates that a partnership must inform those who deal with its members in the course of the partnership's business of any special restrictions on a particular partner's authority. A person dealing with a partnership usually is in no position to know of special agreements between the partners and thus cannot be charged with knowledge of such agreements absent specific notice. (*Williams* v. *More* (1883) 63 Cal. 50, 51.)

■ Adams and Hale practiced law in partnership under the name of Adams and Hale, Attorneys at Law. The firm did not conduct any business other than the practice of law. Plaintiff employed Adams to clear title to certain real property in Nevada and negotiate the purchase of the note and mortgage on that property. Adams was entrusted with $24,500 needed to make an offer to purchase the note and mortgage. In undertaking such responsibilities Adams was practicing law. (See *State Bar of Cal.* v. *Superior Court* (1929) 207 Cal. 323, 334-335 [278 P. 432]; *Nellis* v. *Massey* (1952) 108 Cal.App.2d 724, 728 [239 P.2d 509].)

Although the firm's records indicate that Adams and Hale regarded plaintiff as a client of Adams only, there is no evidence whatever that either Adams or Hale ever informed plaintiff that Adams was not representing plaintiff as a member of the firm. Moreover, Adams and Hale held themselves out to the public and to plaintiff as partners. The partnership displayed a sign viewable from the street reading "Adams and Hale, Attorneys at Law." Such signs are commonly used by law firms to indicate a partnership. (See *Fletcher* v. *Pullen* (1889) 70 Md. 205, 213 [16 A. 887, 888, 14 Am.St.Rep. 355].) Plaintiff testified that he knew that the firm was called Adams and Hale and that he dealt with Adams in the firm's offices. Furthermore, Adams instructed plaintiff to make his check payable to the Adams and Hale Trust Account. In the absence of other evidence these facts would justify a reasonable man in believing that he was dealing with a partnership. (See *Bedell* v. *Morris* (1923) 63 Cal.App. 453, 455-456 [218 P. 769]; *Crabbe* v. *Mires* (1952) 112 Cal.App.2d 456, 459 [246 P.2d 991].)

Hale contends, however, that plaintiff's own testimony supports the conclusion that plaintiff did not deal with Adams as a partner in the firm. Plaintiff testified as follows:

"THE COURT: Were you a client of the law firm of Adams and Hale at that time [at the time plaintiff first met Adams]?

"THE WITNESS: No, sir.

"THE COURT: Had you been at any time within the year 1961 a law client?

"THE WITNESS: No, sir.

"THE COURT: Were you at any time thereafter a law client?

"THE WITNESS: No, sir.

"THE COURT: Of either Adams, Hale or Lee?

"THE WITNESS: No, sir."

This testimony is inconclusive on the issue whether plaintiff knew he was dealing only with Adams individually. At most it reflects lay confusion and uncertainty as to what constitutes an attorney-client relationship. It does not show that plaintiff had any awareness of partnership law, let alone that he meant his transaction to be kept separate from other partnership business. It is therefore insufficient to establish that Adams did not act within the scope of his apparent authority.[3]

 The trial court also erred in concluding that Hale was not liable in his capacity of cotrustee of plaintiff's money deposited in the Adams, Hale, and Lee Trust Account. The account established by the firm of Adams, Hale and Lee in compliance with rule 9 of the Rules of Professional Conduct of the State Bar (Bus. & Prof. Code, § 6076) was a voluntary trust (Civ. Code, § 2216; see also *Hathaway* v. *Patterson* (1873) 45 Cal. 294, 300; 26 A.L.R.2d 1340, 1342; 7 C.J.S. 976-977 and cases cited in note 26), and the members of the firm became voluntary trustees of money thereafter placed in that account

Any action taken by the partners with respect to the money in the account must be considered in the light of their duties and responsibilities as trustees. (See 26 A.L.R.2d 1340, 1342.) A trustee is not strictly liable for the wrongful acts of a cotrustee. "A trustee is responsible for the wrongful acts of a cotrustee to which he consented, or which, by his negligence, he enabled the latter to commit, but for no others." (Civ. Code, § 2239.) A trustee must exercise reasonable supervision over the conduct of a cotrustee in relation to the trust. (*Bermingham* v. *Wilcox* (1898) 120 Cal. 467, 471-473 [52 P. 822].) He may render himself liable "by negligent inattention to his duties, by delinquency therein far short of active participation in the conversion of trust funds by a co-guardian." (*Estate of Whitney* (1932) 124 Cal.App. 109, 118 [11 P.2d

---

[3]It is immaterial in this case that the actual misappropriation occurred after the partnership of Adams and Hale was dissolved. Until plaintiff had notice of the dissolution and consented to a discharge of the partnership, Hale remained liable for obligations assumed before dissolution. (Corp. Code, § 15036.)

1107]; see also, *Fox* v. *Tay* (1891) 89 Cal. 339, 348-349 [24 P. 855, 26 P. 897, 23 Am.St.Rep. 474]; *Gaver* v. *Early* (1923) 191 Cal. 123, 126-127 [215 P. 394].)

 Hale signed a check drawn on the trust account for $21,386 payable to the order of J. C. Adams Trust Account. Although Hale made some inquiry about the money at the time of the transfer, there is no evidence of his reason for making the funds available to Adams, nor was plaintiff consulted before the transfer. Adams could not obtain possession of the money without the acquiescence of Hale or Lee. "[A] fiduciary who thus surrenders assets to the exclusive possession or control of a cofiduciary has an impressive burden of explanation if he is to avoid liability for misconduct on the part of the cofiduciary." (65 A.L.R.2d 1019, 1092-1093.) Hale has not met this burden.

 Apart from the loss of $21,386 misappropriated by Adams, $2,114 of the $24,500 that plaintiff transferred to Adams remains unaccounted for. "Trustees are . . . under an obligation to render to beneficiaries a full account of all their dealings with the trust property, and where there has been a negligent failure to keep true accounts all presumptions are against them upon a settlement." (*Estate of McCabe* (1950) 98 Cal.App.2d 503, 505 [220 P.2d 614]; see also, *Purdy* v. *Johnson* (1917) 174 Cal. 521, 527 [163 P. 893].) Since Hale gave no explanation of the disposition of the remaining $2,114 of plaintiff's money during the period when Hale had full power to withdraw funds from the trust account, he failed to absolve himself of liability to plaintiff for that amount.

### Lee's Liability

 Lee withdrew from the law firm of Adams, Hale and Lee and his name was deleted from the firm name on May 31, 1961, before plaintiff entrusted his money to Adams. Accordingly, Lee is not liable as a partner of Adams for the loss of plaintiff's money. (Corp. Code, § 15036.).

Lee, however, was also a cotrustee of the Adams, Hale, and Lee Trust Account, and remained liable for any acts of his cotrustee that his negligence enabled the cotrustee to commit. (Civ. Code, § 2239.) Lee, however, had no knowledge of the deposit and did not participate with Hale or Adams in the withdrawal of the money. Accordingly, no negligent acts or omissions cf Lee enabled Adams to misappropriate $21,386 of plaintiff's money.

 Lee, like Hale, however, was under a duty to account for the $2,114 that Hale did not turn over to Adams (*Estate of McCabe, supra,* at p. 505). Lee has not dicharged that duty. Although he left the partnership on May 31, 1961, the trust account was not closed until February 2, 1962. Furthermore, Lee testified that until January 23, 1962, when he

withdrew $845.79 from the trust account, he realized that he "was one of the named persons on the account at the U.C.B. designated as the Adams, Hale and Lee Trust Account." On retrial Lee may be able to account for the disposition of the balance of plaintiff's money and show that, as in the case of the $21,386 that Hale delivered to Adams, he was in no way responsible for the loss. In the absence of such an accounting, however, Lee has not absolved himself of liability for the unaccounted-for balance.

The part of the judgment in favor of defendant banks is affirmed. The part of the judgment in favor of defendants Hale and Lee is reversed. Defendant banks shall recover their costs on appeal from plaintiff. Plaintiff shall recover from defendants Hale and Lee his costs on the appeal from the part of the judgment in their favor.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.