**John Anthony SANCHEZ, Plaintiff,**

v.

**H. Dale MURPHY and Michael Specchio,
Defendants.**

Civ. No. R–2937 BRT.

United States District Court,
D. Nevada.

Dec. 21, 1974.

Seymour H. Patt, Reno, Nev., for plaintiff.

Hibbs & Bullis, Ltd., Reno, Nev., for defendants.

### ORDER GRANTING SUMMARY JUDGMENT

BRUCE R. THOMPSON, District Judge.

In this case, jurisdiction is based on diversity of citizenship. It is a malpractice action against an attorney.

Defendant Murphy is the Public Defender of Washoe County, Nevada. De-

fendant Specchio is a Deputy Public Defender. Under Nevada statutes, the Public Defender is prohibited from engaging in private practice. Both the Public Defender and his Deputies receive only a stated salary as compensation.

The Court appointed the Public Defender's Office to represent plaintiff in a state criminal prosecution. The case was assigned to Specchio. Murphy had no part in it. Under N.R.S. 260.010 et seq.,[1] the Public Defender (Murphy)

1. "260.010 Creation of office by ordinance; appointment; term.

"1. In counties having a population of 100,000 or more, as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce, the boards of county commissioners shall create by ordinance the office of public defender. In counties having a population of less than 100,000, as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce, boards of county commissioners shall have the power and jurisdiction in their respective counties to create by ordinance the office of public defender.

"2. The office of public defender when created shall be filled by appointment by the board of county commissioners.

"3. The public defender shall serve at the pleasure of the board of county commissioners.

"260.020 Joint county action to establish office. A county may join with one or more other counties to establish one office of public defender to serve those counties.

"260.030 Qualifications; representation of indigent persons charged with public offense.

"1. The public defender shall be a qualified attorney licensed to practice in this state.

"2. The public defender shall, when designated pursuant to NRS 171.188, represent, without charge, each indigent person who is under arrest and held for a public offense.

"260.040 Compensation; deputies and employees; private practice of law prohibited in certain counties; office expenses.

"1. The compensation of the public defender shall be fixed by the board of county commissioners. The public defender of any two or more counties shall be compensated and be permitted private civil practice of the law as determined by the boards of county commissioners of such counties, subject to the provisions of subsection 4.

"2. The public defender shall appoint as many deputies or assistant attorneys, clerks, investigators, stenographers and other employees as he considers necessary to enable him to carry out his responsibilities, with the approval of the board of county commissioners. An assistant attorney must be a qualified attorney licensed to practice in this state and may be placed on a part-time or full-time basis.

"3. The compensation of persons appointed under subsection 2 shall be fixed by the board of county commissioners of the county or counties so served.

"4. The public defender and his deputies and assistant attorneys in a county having a population of less than 100,000 as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce may engage in the private practice of law. In any other county, the public defender and his deputies and assistant attorneys shall not engage in the private practice of law after July 1, 1975.

"5. The board of county commissioners shall provide office space, furniture, equipment and supplies for the use of the public defender suitable for the conduct of the business of his office. However, the board of county commissioners may provide for an allowance in place of facilities. Each such item is a charge against the county in which public defender services are rendered. If the public defender serves more than one county, expenses that are properly allocable to the business of more than one of those counties shall be prorated among the counties concerned.

"260.050 Duties of public defender. When representing an indigent person, the public defender shall:

"1. Counsel and defend him, if he is held in custody and charged with a public offense at every stage of the proceedings, including revocation of probation or parole, following his designation by the appropriate judge of the district court, justice of the peace or municipal or police judge; and

"2. Prosecute, subject to the provisions of subsection 3 of NRS 180.060, any appeals or other remedies before or after conviction that he considers to be in the interests of justice.

"260.060 Magistrate, district court may appoint, compensate other defense counsel. For cause, the magistrate or district court may, on its own motion or upon motion of the public defender or the indigent person, appoint and compensate out of county funds an attorney other than, or in addition to, the public defender to represent such indigent person at any stage of the proceedings or on appeal in accordance with the laws of this state pertaining to the appointment of counsel to represent indigent criminal defendants.

"260.070 Annual reports. The public defender shall make an annual report to the board of county commissioners covering all

is appointed by the Board of County Commissioners. The Public Defender appoints his deputies. The salaries are fixed by the Commissioners.

This is a motion for summary judgment on behalf of defendant Murphy. The affidavits establish without dispute that Murphy did not participate in any way in the representation of Sanchez in defense of the state prosecution. Deputy Public Defender Specchio was plaintiff's sole advisor and handled the defense by himself.

■ Plaintiff asserts that Murphy is liable by virtue of his office. We have come to the conclusion that this is not true.

The rights, liabilities and immunities of a state or federal public defender in rendering services to a client whom he has been appointed to represent because of indigency is a developing area of the law.

In Espinoza v. Rogers, 470 F.2d 1174 (10th Cir. 1972), it was held that federal jurisdiction of an action against a public defender for malpractice cannot be predicated on the Civil Rights Act (42 U.S.C. § 1983; 28 U.S.C. § 1343), inasmuch as the defendant was not acting under color of state law. That Court said:

> "The Colorado office of State Public Defender derives its existence from Colorado statutes. See C.R.S. §§ 39–21–1 through 39–21–5. These statutes in no way attempt to control or otherwise influence the professional judgment of a lawyer employed as a public defender. Additionally, a Colorado Public Defender's professional duties and responsibilities toward his clients are identical in all respects to any other Colorado attorney whether privately retained or court-appointed."

■ This seems to us to be an appropriate characterization of the professional relationship between court-appointed counsel and indigent defendants under public defender systems. The relationship is no different than that between a client and privately retained counsel. The professional obligations of the attorney to his client are the same. The fact that the attorney, in a sense, holds a public office and is compensated from public funds makes no difference.

■■ The relationship of the public defender and his deputies among themselves is not a partnership relationship. There is no mutual agency as in a private law partnership in which each partner is liable for the actionable misconduct of another within the scope of the partnership practice. Cf. Blackmon v. Hale, 1 Cal.3d 548, 83 Cal.Rptr. 194, 463 P.2d 418 (1970). The liability of one partner for the actionable misconduct of other members of the firm rests on the law of partnership and finds economic justification in the fact that the fees for services are shared. Each of the public defender attorneys is compensated independently by salary for his own services.

■ If Murphy, the Public Defender, is vicariously liable for the acts of his Deputy solely by virtue of the relationship, it must be on the basis of principles applicable to public officers. For many years it has been quite generally held by the courts that a deputy is one who, by appointment, exercises an office in another's right, doing all things in the principal's name, for whose misconduct the principal is answerable. 63 Am.Jur.2d 928, p. 490. On the other hand, there is substantial authority in support of the rule that in the absence of statute imposing liability or of negligence on his part in appointing or supervising his assistants, neither an officer nor his bondsman is liable for the default and misfeasance of assistants appointed by him, provided the assis-

---

cases handled by his office during the preceding year.

"260.080 Construction of chapter. Nothing in this chapter shall be construed to interfere in any way with the manner in which the several counties and district courts deal with indigent defendants, if the provisions of this chapter are not applicable."

tants, by virtue of the law and of the appointment, become in a sense officers themselves or servants of the public, as distinguished from servants of the officer. See annotations: 1 ALR 222, 102 ALR 174, 116 ALR 1064.

 The office of public defender is *sui generis*. Unlike other public offices, it is not established to serve the public generally. Such offices have been created in implementation of the obligations created by the Sixth and Fourteenth Amendments to the United States Constitution, to the end that every person charged with crime shall have an opportunity to be represented by counsel and to receive a fair trial. Recipients of the services of a public defender's office are only those indigents in whose aid a court or magistrate appoints a public defender to render legal advice and assistance. As noted, the relationship thus created is a strictly professional one. It is a personal relationship of trust and confidence governed by the canons of professional ethics under which the attorney owes an obligation of unswerving loyalty and devotion to the interests of his client.

■ True, the Nevada statutes (fn. 1) create only the office of public defender. True, the courts normally appoint "the public defender" to represent a defendant. The public defender appoints deputies and assigns a case to a deputy. If the nomenclature "deputy" is conclusive, the public defender is responsible for the deputy's malpractice. We think the name designation is not conclusive. The personal attorney-client relationship established between a deputy and a defendant is not one that the public defender can control. The canons of professional ethics require that the deputy be "his own man" irrespective of advice or pressures from others. A deputy public defender cannot in any realistic sense, in fulfillment of his professional responsibilities, be a servant of the public defender. He is, himself, an independent officer.

■ Thus, in the absence of allegation or proof of negligence resulting in the appointment of an incompetent deputy, or allegation and proof of personal participation by the Public Defender in the alleged actionable misconduct of his Deputy, the Public Defender cannot be held personally and vicariously liable for alleged malpractice of the Deputy. The exceptions are not applicable in this case. Accordingly,

It hereby is ordered that the motion for summary judgment on behalf of defendant H. Dale Murphy be, and it hereby is, granted, and the action shall be dismissed as to that defendant.