**Ted H. DRIVER, Appellant–Plaintiff,**

v.

**HOWARD COUNTY PUBLIC DEFENDER'S OFFICE, County of Howard, City of Kokomo, James E. Fleming and Merrill W. Otterman, Appellees–Defendants.**

No. 34A04–8910–CV–482 [1].

Court of Appeals of Indiana, Fifth District.

June 18, 1991.

Publication Ordered July 25, 1991.

---

1. This case was reassigned to this office on January 2, 1991.

Caroline B. Briggs, Flora, for appellant-plaintiff.

Alan D. Wilson, Fell, McGarvey & Trauring, Kokomo, for appellees-defendants.

SHARPNACK, Judge.

Ted Driver appeals from the entry of summary judgment in favor of James R. Fleming and Merrill W. Otterman, defendants in one of two actions commenced by

Driver and later consolidated, and in favor of John C. Wood, a defendant in the other action. We affirm.

Driver identifies several alleged errors for our review under the heading of a single issue. We restate the issue as the following multiple issues.

1. Whether alleged violations of the Rules of Professional Conduct can support a private cause of action for damages.

2. Whether expert testimony is required to establish the standard of care owed by the defendant in a legal malpractice action, and whether such testimony is required to establish a breach of duty in such an action.

3. Whether the defendants' alleged negligence proximately caused him any injury.

4. Whether Driver's complaint against Wood stated a legally cognizable cause of action under 42 U.S.C. § 1983.

5. Whether a chief public defender may be held liable for the alleged malpractice of a deputy public defender.

We restate the facts in the light most favorable to Driver, the nonmoving party. On February 25, 1986, the Howard County grand jury indicted Driver on charges of dealing in a controlled substance. The trial court appointed the Howard County Public Defender to represent Driver. The public defender's office originally assigned Driver's defense to deputy public defender Otterman. Attorney Otterman eventually told Driver that the case had been dismissed, although it had not. Otterman later turned Driver's case over to another deputy public defender, Wood. Driver did not find out that Wood was representing him in the case until January of 1988.

Wood informed Driver that the court had scheduled the trial for February 12, 1988. The court continued the trial to April 13, 1988, but Wood failed to inform Driver of the new trial date. Because he was dissatisfied with Wood due to a perceived lack of communication, Driver decided to retain private counsel in March of 1988. He retained the services of attorney Ferd Samper, who appeared for Driver on March 28. Both Driver and Samper attempted to get Driver's file from Wood, but, for a variety of reasons, their attempts were unsuccessful until Samper obtained the file two days before trial.

Shortly after he entered his appearance, Samper moved for a continuance of the trial from the scheduled April 13 date. The trial court denied the motion.

Driver kept in contact with Samper throughout the weeks before trial. Despite the fact that Samper knew the trial date, and despite the fact that Driver was in contact with Samper as late as two days before the trial, Driver maintains that he did not know of the trial date. Driver left the state before the trial date and did not return until after the trial.

Both Wood and Samper appeared for Driver at trial. Samper moved for a continuance, and Wood, in support of the motion, stated that he was not sure whether Driver had notice of the trial. The court denied the motion, and the case went to trial before a jury, which convicted Driver. He received a sentence of fifteen years imprisonment. The supreme court later remanded his case to the trial court, which then reversed his conviction because it found that his failure to appear at trial was not voluntary.

■ Driver asks this court to overturn the trial court's entry of an adverse summary judgment. When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact. *Ayres v. Indian Heights Volunteer Fire Dept.* (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue which

would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we will affirm the entry of summary judgment. *Id.* The moving party bears the burden of proving both that no genuine issue of fact exists and that he is entitled to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 313, 411 N.E.2d 614, 614.

Consideration of this case is complicated for us, as it must have been for the trial court, by the fact that the complaint of the plaintiff in each of the two cases consolidated was prepared by the plaintiff *pro se.* Counsel who eventually appeared for plaintiff filed a motion for leave to amend, to which was attached a "rough draft" of a proposed amended complaint. Although the record indicates the motion was granted, the trial court judge at the hearing on the motion for summary judgment stated he did not intend to rule on the motion to amend and would consider that at a later time. There is nothing in the record to show that any amended complaint was ever filed.

To make sense of the case we must first determine what claims are made against which defendants. The first complaint filed by Driver named as defendants James E. Fleming, Howard County chief public defender, Merrill W. Otterman, a deputy public defender, and the Howard County Public Defender's Office ("HPD"). This complaint also referred to, but did not include as a defendant, another deputy public defender, John C. Wood. It is clear from the record before us that Fleming, Otterman and Wood were the only attorneys

from the HPD who were in any way involved in the representation of Driver in the criminal case out of which Driver's claims arose. It does not appear to what extent there may be any entity that could be called the HPD. For our purposes, we consider allegations made against HPD to be allegations against Fleming, Otterman and Wood insofar as any action or nonaction of any of them related to the handling of Driver's criminal case.

From the first complaint and Driver's affidavit we understand that his claim against Fleming is that he failed to assure that Otterman was performing his duties to defend Driver as required by the Code of Professional Conduct, that while under Fleming's supervision, Otterman falsely informed Driver that his trial had been dismissed, withdrew his appearance for Driver and turned the case over to Wood, all without informing Driver. The claim against Otterman is that he falsely informed Driver that the case had been dismissed, withdrew and turned the case over to Wood without informing Driver. The claim generally against the HPD is that it failed to turn over Driver's file to him or to his privately employed counsel, Samper, until very shortly before trial and that it was so negligent in the representation of Driver that his trial was "no more than a travesty." All of this he alleges was in violation of the Code of Professional Conduct and deprived him of his federally protected constitutional rights. The latter allegations as to the HPD we construe as allegations concerning Wood who, in Driver's affidavit, is said to have initially failed to inform Driver he was representing him, failed to advise him of a trial date (subsequently continued), failed to make Driver's file available to Driver or Samper (his privately hired attorney), failed to depose, interview or call as witnesses several persons as Driver had requested him to do, failed to depose a police officer, Raines, whose deposition Wood had indicated he needed to take in a motion for a continuance, and failed to notify Driver of the setting of the

criminal case for trial at the time it was held in Driver's absence.

The second complaint filed by Driver named as defendants the Honorable Allen Brubaker, the judge who presided over the criminal trial, and Wood. This complaint is described as a "Suit for Conspiracy to Violate and/or Violating [sic] Plaintiff's Civil Rights as Guaranteed by the Constitution of the United States and State of Indiana." The complaint, although against more than one defendant, refers throughout to the singular "respondent" and on the face of it appears directed only to alleged actions of the judge, albeit as a participant in an alleged conspiracy. We will inflate the complaint to the limit and construe it to charge Wood with being part of the "conspiracy" in doing those things previously described in his representation of Driver.

Distillation of all this brings us to the following conclusions as to the claims:

Fleming is claimed to have been negligent in supervising Otterman and Wood.

Otterman is claimed to have been negligent in advising Driver his case had been dismissed when it had not been and in turning the case over to Wood without telling Driver.

Wood is claimed to have conspired to deprive Driver of his constitutional rights under color of law by not telling him of the trial date, not deposing or calling various witnesses, and not turning the file over to Driver or Samper sooner.

The consolidation of the two cases did not change the claims or the defendants to the claims. Wood is not a defendant to the first claim. Fleming and Otterman are not defendants to the second claim. The only claim against Wood is the claim of conspiracy to deprive Driver of constitutional rights under color of law. We will address that claim first.

■ The second complaint, in which Wood was named as a defendant, was not a complaint for negligence. Instead, this complaint attempted to state a claim under 42 U.S.C. § 1983 for an unlawful deprivation of constitutional rights. We find that, as a matter of law, Driver had no legally cognizable cause of action against Wood under 42 U.S.C. § 1983. Under the statute, a party is not entitled to recover damages unless he or she was deprived of a right under color of state law. The United States Supreme Court has held that a public defender does not act under color of state law when acting on behalf of a client, even if the defender's actions on behalf of the client are arguably negligent and subject to state tort remedies. *Briscoe v. LaHue* (1983), 460 U.S. 325, 329 n. 6, 103 S.Ct. 1108, 1112 n. 6, 75 L.Ed.2d 96, 104 n. 6; *Polk County v. Dodson* (1981), 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509, 520–521. Here, Driver seeks recovery based on Wood's alleged conspiracy to deprive him of his constitutional rights while Wood acted as his public defender. Such a claim cannot stand under *Briscoe* and *LaHue*. The trial court properly entered summary judgment on behalf of Wood.[2]

■ Driver alleges that Otterman committed malpractice by transferring his case to Wood, by failing to notify him of the transfer, and, by failing to inform him of his trial date. We find that none of these allegations are sufficient to survive the motion for summary judgment.

There is no evidence on the record supporting the contention that the mere act of transferring the case to Wood constituted negligence. There is nothing in the record to indicate that Otterman knew or had reason to believe that Wood was not a competent attorney. Driver himself testified in

---

**2.** We note that the trial court order granting summary judgment does not specifically mention 42 U.S.C. § 1983. The court's failure in this regard is insignificant, because the § 1983 claim was the only one which Driver asserted against Wood. Even if the trial court erroneously believed it was entering judgment on a negligence claim, we would affirm, because a trial court's entry of summary judgment is to be affirmed on appeal on any ground supported by the record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157; *McMahan v. Snap On Tool Corp.* (1985), Ind.App., 478 N.E.2d 116, 121 n. 2.

his deposition that he had no objection to Wood acting as his attorney, and that Wood had in fact represented him in other actions. Finally, because Driver knew of the transfer long before the trial, and because he obtained private counsel after learning of the transfer, the record shows no evidence of harm flowing from the transfer. The trial court did not err in granting summary judgment as to Otterman.

■ Driver argues that Fleming should be held liable for a negligent failure to supervise the manner in which Otterman and Wood handled Driver's case. Driver has not cited any precedent holding that a public defender may be held liable for alleged malpractice of deputy public defenders. The question of whether a public defender exercises control over his deputies sufficient to render him liable for their professional malpractice is one which has not been addressed by our courts, and our review of the question has revealed only two cases from elsewhere in which it has been addressed: *Sanchez v. Murphy* (D.Nevada 1974), 385 F.Supp. 1362 and *Ramirez v. Harris* (1989), 105 Nev. 219, 773 P.2d 343. In each of these cases the courts held that a public defender could not be held liable for the professional malpractice of his deputies because the deputies have an obligation to the client to use their own professional judgment in representing their clients and because, as a matter of Nevada law, the public defender has neither the right nor the duty to override their exercise of professional judgment on behalf of their client.

■ We believe that this rule should be applied in Indiana. As the Nevada Supreme Court and Federal District Court for the District of Nevada have both noted, the individual deputy public defender owes to his client a duty to use his professional judgment, and the public defender has no right to interject himself into the attorney client relationship by controlling the decisions which the deputy makes in the exercise of his professional judgment. Furthermore, even if a relationship were to be

assumed that could otherwise impose vicarious liability on Fleming for the actions of the deputy public defenders, their nonliability, as we have found it here, would also result in nonliability for him as well. *Biel, Inc. v. Kirsch* (1958), 130 Ind.App. 46, 53, 153 N.E.2d 140, 143–144.

It is not necessary that we address the issues concerning the applicability of the Code of Professional Conduct as a standard of care or the need for expert testimony to establish a standard of care and breach of it.

We therefore affirm the entry of summary judgment in favor of all of the defendants.

AFFIRMED.

MILLER and BAKER, JJ., concur.